O’NIELL, C. J.
Plaintiffs have appealed from a judgment dismissing their suit on an exception of no cause or right of action. Several of the defendants first filed exceptions to the method of citation, and then joined the other defendants in their exception of no cause or right of action, saying that they reserved the benefit of the exception to the method of citation. The judge sustained the exception to the method of citation, only to the extent, however, of directing that the defendants who had excepted should be properly cited. On the same day, the court rendered a judgment maintaining the exception of no cause or right of action, as to all of the defendants, and dismissing the suit. The plaintiffs appealed from both judgments. The defendants did not appeal from the judgment, which allowed the plaintiffs another opportunity to have the citation properly served; nor do they ask that the judgment be amended so as to dismiss the suit for want of citation. They prefer, of course, that the suit should remain dismissed for want of a cause or right of action. That ground for dismissing the suit was and is yet applicable to the defendants who excepted to the method of citation, as well as to those who were properly cited.
 Appellants contend that, by joining in the exception of no cause or right of action, the defendants who first excepted to the method of citation have abandoned that exception, notwithstanding their expressed intention to reserve it. That is a matter of no importance if the exception of no cause or right of action was well founded. The argument that the filing of the exception of no cause or right of action was a waiver of citation is an acknowledgment that the defendants who had excepted to the method of citation are subject to the ruling of the court on the exception of no cause or right of action. And the attorney for those defendants also concedes that they were and are yet subject to the ruling of the court on the exception of no cause or right of action. In other words, the judgment dismissing the suit for want of a cause or right of action has done away with the previous ruling on the exception to the method of citation. Therefore we need not consider this latter exception if we affirm the judgment sustaining the exception of no cause or right of action.
The plaintiffs are the testamentary executor of the estate and some of the collateral-heirs, nephews and nieces, of the deceased, John W. McDonald. The defendants are the nephews and nieces who attacked the will of the deceased, averring that he was not of sound mind when he made his will. The judgment,of the court in that suit was that John W. McDonald was of sound mind when he made his will. See McDonald et al. v. Baker et al., 150 La. 1084, 91 South. 519. The object of the present suit is to revoke the bequests made to the defendants in John W. McDonald’s will, because of the alleged “grievous injury done to the memory of the testator,” by the allegations made by the present defendants, as plaintiffs in the other suit. The allegations were:
*? “That the said John W. McDonald, deceased, was, for a number of years prior to his death, afflicted with an incurable malady, and that the said John W. McDonald was notoriously insane, and was incapable of making a will.”
It is alleged in the present suit that John W. McDonald had enjoyed an excellent reputation, socially and commercially, in the community in which he lived.
The action is founded upon articles 1559, 1560, and 1561 of the Civil Code, laying down rules for the revocation of donations inter vivos, and upon articles 1710 and 1711, seeming to apply the same rules to donations mortis oausa.
Article lo59 enumerates the four causes for which “donations inter vivos are liable to be revoked or dissolved,” the first cause stated being “the ingratitude of the donee.”
Article 1560 specifies the only three manifestations of ingratitude for which a donation inter vivos is liable to be revoked, viz.: (1) If the donee has attempted to take the life of the donor. (2) If the donee has been guilty towards the donor “of cruel treatment, crimes, or grievous' injuries.” (3) If the do-nee has refused the donor food, when in distress.
Article 1561 declares that actions for revocation of donations for ingratitude are barred by the prescription or limitation of one year from the day of the act of ingratitude, or from the day on which the donor became aware of the act of ingratitude. And this article declares that the action for revocation on account of ingratitude cannot be brought against the heirs of the donee; and, that it cannot be brought by the heirs of the donor against the donee unless the donor himself has first brought the action or has died within the year after the act of ingratitude was committed.
The provisions of articles 1559, 1560, and 1561 are in the chapter treating only “Of Donations Inter Vivos,” and are not at all ap¡ propriate to donations mortis causa. Articles 1710 and 1711, however, in the chapter treating “Of Dispositions Mortis Oausa,” seem very significant. Article 1710 declares that the causes for which donations inter vivos are subject to revocation are also causes of action for the revocation of testamentary dispositions. And article 1711 declares that the action for revocation of a testamentary disposition, “founded on a grievous injury done to the memory of the testator,” is barred by the prescription or limitation of “a year from the day of the offense.”
Articles 1710 and 1711 of the Civil Code are translations, respectively, of articles 1046 and 1047 of the Code Napoleon. In Dalloz Codes Annotes, vol. 2, p. 540, notes 103 to 109, a doubt is expressed as to whether the meaning of articles 1046 and 1047 of the French Code is that a grievous injury done to the memory of the testator, “Une injure grave faite a la memoire du defunt,” is a sufficient cause for the revocation of a testamentary disposition, on the ground of ingratitude. The author puts the question, “Is a grave injury to the memory of the testa-tor a cause for revocation on the ground of ingratitude?’.’ And he answers that the affirmative seems to result from article 1047, when considered in connection with articles 1046 and 955. The latter' is article 1560 of the Louisiana Code, on the revocation of donations inter vivos, on account of ingratitude. Opinions are cited to the effect that the revocation of a testament might be pronounced for the cause of ingratitude, if the means, “maneuvres,” employed by a universal legatee, could be adjudged serious enough to constitute an actual injury to the memory of the deceased testator. But the commentator concludes by saying that the majority or prevailing opinion is ■ that grave injury to the memory of the testapfor is not a cause for revoking a testament on the ground of ingratitude. And he cites *7 the General'Jurisprudence on Donations Inter Vivos, 1856; Supplement to same, p. 510; Aubrey et Rau (4th Ed.) vol. 7, § 708, note 8, p. 415; Demalombe, vol. 20, No. 639; Laurent, vol. 13, No. 9; Hue, vol. 6, No. 242; Baudry Lacantinerie et Colin, vol. 1, No. 1606; Planiol, vol. 3, No. 2645. And he makes the further comment that, inasmuch as article 955 (article 1560 of the Louisiana Code) speaks only of injuries to the donor himself, articles 1046 and 1047 (1710 and 1711 of the Louisiana Code), if construed as making testaments revocable for ingratitude, would add an additional cause, by speaking of injury to the donor’s memory. Some of the French commentators have expressed the opinion that only universal legatees or residuary heirs can have a right of action to revoke a legacy on the ground of ingratitude; others have expressed the opinion that the action may be brought by any person affected by the bequest, even by a particular legatee if the obligation be on him to discharge the legacy.
Interesting as the subject is, we are not compelled, in this case, to decide whether a defamation of the memory of a deceased testator, by one of his legatees, could ever be deemed such a “grievous injury” as to warrant a revocation of the bequest on the ground of ingratitude, at the suit of other legatees, or of the heirs of the deceased testator. We are not aware that such a suit has ever been brought in this state. It is sufficient to say that there has not been such a “grievous injury done to the memory of the testator” in this case.
It is true, plaintiffs allege that the allegations made by the defendants, as plaintiffs in the suit to annul the will of John W. McDonald, that he was afflicted with an incurable malady and was notoriously insane, were false and malicious and were made without probable cause, etc. But the petition in this suit makes reference to the petition in the other suit; and the entire record in that suit is before us, showing the impossibility of any one’s ever believing that the allegations made in that suit, that John W. McDonald was afflicted with an incurable malady and was notoriously insane, were made with malice, or without probable cause. We must conclude, therefore that the allegations of malice and of want of probable cause are controlled by the record referred to in the petition in this suit, and are not allegations of fact, but inferences not well founded.
 Plaintiffs also allege that the defendants, as plaintiffs in the other suit, renounced their legacies. Other allegations on the subject, in the petition in this suit, show that plaintiffs do not mean to say that the defendants here, as plaintiffs in the other suit, expressly renounced their legacies, but mean that the suit itself had the effect of renoun e. ing the legacies. That is not an allegation of fact; it is only a conclusion of law, or consequence contended for. The petition in the other suit, referred to in this suit, does not contain a renunciation of the legacies. When a record is referred to as proof of an allegation of fact in a petition in a lawsuit, the record referred to governs in determining whether the petition discloses a cause of action.
The judgment appealed from, dismissing this suit for want of a cause or right of action, is affirmed, at appellant’s cost.